The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Very good. So again, we're here to hear argument in 191341, Navy Federal Credit Union v. LTD Financial Services. Mr. Gottlieb, whenever you're ready. Thank you, Your Honor, and may it please the Court. The question in this case is whether Navy Federal Credit Union, a federally chartered corporation whose principal place of business is in Virginia, should be excluded from the reach of Section 1332C1's definition of corporate citizenship simply because it is organized itself under a federal rather than a state charter. The plain meaning of the statutory text counsels against such a result, as does the statute's context, structure, and purpose. Navy Federal is a nonprofit, federally chartered credit union that serves members of the military, veterans, and their families. There's no dispute in this case that Virginia is Navy Federal's principal place of business. Navy Federal filed this suit to protect its members from abusive debt collection practices by a group of out-of-state defendants that purchased debt accounts from Navy Federal. And relying on a long line of cases that all have allowed Navy Federal to invoke the federal diversity jurisdiction statute, Navy Federal brought this suit in the Eastern District of Virginia. Had Navy Federal brought this suit in state court, it is likely that some, if not all, defendants would have sought to remove the action to federal court. The parties in this case, the parties agreed that this court should begin with the text of Section 1332C1, and we believe that that text is clear. It states that a corporation shall be deemed to be a citizen of every state and foreign state by which it has been incorporated, and of the state or foreign state where it has its principal place of business. Navy Federal is clearly defined as a corporation under the Federal Credit Union Act. It is not incorporated in any state, and its principal place of business is Virginia. Applying the text literally and according to its ordinary usage, Navy Federal is a citizen of no state based on place of incorporation, and a citizen of Virginia based on its principal place of business. This is the obvious and plain reading of the text. It is a conception of citizenship that is cumulative when considering, quote, every state of incorporation and an entity's principal place of business. Mr. Gottlieb, I appreciate the textual argument you're making. It seems to me, though, that if it is as plain and obvious as you say it is, why is it then that to the extent that courts have weighed in on this, the vast majority of courts have disagreed with your interpretation of that statute? We don't think that the vast majority of courts have disagreed with it. There are a number of contexts in which courts have considered the application of Section 1332 to particular corporations chartered at the federal level. For example, the Second Circuit, Ninth Circuit, and Fifth Circuit cases that the defendants cite in their briefs deal with national banks. National banks have a statute that predates the enactment of Section 1332C1 by almost a decade and uses a concept that is distinct from principal place of business. It uses the concept of home office. Most every other statute that Congress has legislated in this context has done so to fix a particular place of incorporation, such as the District of Columbia, or to adopt a concept of citizenship that is different from principal place of business, such as a home office or a concept of citizenship, such as in the national bank statute, stating that banks are located in the state, citizens of the state in which they are located. We think there have been a number of courts that have looked at this that have interpreted the statute in very different contexts. Many of those decisions that are cited were decided prior to 2011, and we think that the amendments to the statute in 2011 confirmed what Congress's intent was in 1958. In 2011, Congress added the word every to the place of incorporation clause to make clear that not just one place of incorporation is somehow the sank or sank notion of corporateness, and also included foreign corporations within the definition of place of incorporation. Congress also, I suppose, could have made this very clear by including federal corporations that are chartered federally in the statute, but they didn't. That's right. Congress did not do that, but there is no burden on Congress to speak with that kind of clarity in jurisdictional statutes, particularly when what Congress is doing is abrogating common law rules. The Supreme Court has been quite clear about that in a number of decisions, and this court has as well. The 1958 legislative history, if you go back to the 1958 legislative history, we actually think that defendants and other courts that have looked at this have misread that history. If you look at the relevant document that is cited, to the extent that we're looking at legislative history, the Senate report makes quite clear, pages 4 through 5, that the Congress that enacted the 1958 statute viewed place of incorporation as a legal fiction that could be abused. The purpose of the amendment in 1958, if you read that history, was to stop that abuse, and Congress recognized at page 5 of that Senate report that corporations that are national in scope, such as railroads or insurers, would still be eligible for diversity jurisdiction under the principal place of business clause. We think that courts have misread that legislative history to the extent they've looked at it. Sorry, Mr. Gottlieb. There's a lot that I found attractive about your argument. The one thing, well, not the only thing, but the one thing that does give me pause is what is admittedly a dictum in a Supreme Court case, the Wachovia bank case. Obviously, dictum is not necessarily binding on us, but dictum from the Supreme Court is something that we have to pay particularly careful attention to. I think you know what the language is that I'm concerned about, and I'm still struggling to figure out a way to reconcile that language with your argument, which, in many respects, makes a lot of sense, but we can't simply willy-nilly if you are even dictum when it comes from the 9 in D.C. So what about that? Yes, Your Honor. I think the difference from the Wachovia case is that you're dealing with the national banks, and the national banks are subject to their own jurisdictional statute, 28 U.S.C. Section 1348. That section expressly defines the citizenship of national banks for diversity purposes and states that national banks shall be deemed citizens of the states in which they are respectively located. That dictum did not address the obvious issue that the national bank statute was enacted in 1948, and that's 10 years before Congress enacted the diversity jurisdiction statute. So Congress in 1958 could not have made any determination about national banks not fitting within the statute, and, in fact, the national bank statute, the original version of it dates back to 1911. All of that predates Section 1332. So, Counsel, I thought you were going to say the dictum isn't actually contrary to your position at all, right? Because where it says, usually chartered as corporate bodies by a particular state, key phrase here, ordinarily fit comfortably within this prescription. In other words, they're going to satisfy the first prong of 1332C1 if you're a state charter. And that reading of that language in Wachovia is confirmed by footnote 9 where the Supreme Court in Wachovia goes and explains that this is a both standard and explains why those ideas are distinct in this particular context. So I don't disagree with what you've said, but the basic point is I don't think the dictum is actually contrary to your position, particularly when it's read in light of footnote 9. No? Unsurprisingly, Judge Richardson, that's a better argument than I first stumbled onto. So I certainly agree with that reading of Wachovia. We also agree that the court in other decisions where it has construed the diversity jurisdiction statute has never treated the two provisions conjunctively, and Wachovia certainly didn't purport to do so. And we think that the reading that the district court adopted is not only inconsistent with that context that Your Honor has provided from Wachovia, but also runs directly into the reasoning of this court in cases like Athena-Otto and cases like Slotchev. Athena-Otto, in particular, in addressing corporations that have no principal place of business, made quite clear that a corporation could have no principal place of business and yet still qualify as a citizen under Section 1332C1. That would, of course, be impossible if one were reading the two clauses conjunctively. Slotchev has the same result. And importantly, in Athena-Otto, this court surveyed decisions from three other circuit courts. All of those other circuit courts, although they differed at the margins in interpreting the statute, none of those courts took the position that the two clauses have to be read conjunctively. In other words, that you had to satisfy both or have a principal place of business. And the district court's decision simply cannot be squared with that reasoning. The defendant's position is even further unmoored from the statutory text because they would read a sequential requirement into the statute. In other words, they read the statute as saying a court must first consider place of incorporation, and only if that is satisfied, then consider a principal place of business clause. The statute simply cannot be read in that fashion. There's no indication that Congress was trying to create that type of sequential reading. And in fact, the legislative history from 1958 suggests Congress never would have contemplated treating place of incorporation as sacrosanct. Congress thought place of incorporation was being used as a legal fiction to abuse the diversity jurisdiction statute. So, counsel, I take your basic position here to be that based on Exxon Mobil and other cases, we're not giving a broad or narrow reading of the text. We're just reading the text. But even if you were to accept your opposing counsel's suggestion that they're required to have a clear statement, that this is as clear as it needs to be in light of their failure to provide any plausible reading of the statutory language to support the view that Clause 2 only applies if Clause 1 is also met. We think that's exactly right, Your Honor. And that is consistent with the fact that Banker's Trust was not announcing some common law rule based on extraneous constitutional principles or due process considerations. Banker's Trust in 1916 simply said there's no other authority on which we could hold or which we could define a corporation of citizenship apart from its place of incorporation. In 1958, Congress provided that other basis. It provided the principal place of business clause. And that is sufficient clarity enough for Congress to have legislated against that background. It spoke directly to the issue. If I could reserve the balance of my time, Your Honor. Okay. Thank you very much, Mr. Gottlieb. Ms. Hoffman, we'll hear from you. Yes. I'm here representing LTD Financial Services and arguing the subject matter jurisdiction issue on behalf of all the appellees. But I'm also joined by David Gutowski, who is here to answer any specific questions the panel might have with regard to his client debt management partners or the other appellee debut solutions. We reserve five minutes of our time for Mr. Gutowski. Your Honors, the district court got the question of subject matter jurisdiction right. A Navy federal would have this court expand the jurisdiction of federal courts by overturning over a century of case law, which is consistently held that federal corporations are not citizens of any state under the diversity statute, unless Congress has specifically designated a state citizenship for purposes of diversity. Navy federal would overturn this law in the face of Congress having amended the diversity statute twice without addressing federal corporations nor even mentioning anywhere in the history of these amendments its intention to change the well-established treatment of federal corporations under the diversity statute. Counsel? Yes. I just want to make clear, because I wasn't clear from your brief. Do you agree that Navy federal is a corporation? I think that when you look at the federal credit union statute, I think it refers to federal credit member associations as both member associations and corporations. So I believe there's some ambiguity in the statute, but that's not an issue that we, unless the court is interested in pursuing it, it's not an issue that we intend to focus on and appeal. Okay. And so help me, if you would, go to the text and explain to me how I can read that language, with clear statement rule or not, to have the second prepositional clause of the state or foreign state where it is principal place of business. How can I read that and be limited to those instances where the first clause has already been met? Walk me through the text so that I can understand how that works. Well, I think the district court did it as well. I disagree with Mr. Gottlieb's construction. I understand. I just want you to walk me through how you would get there. I would get there through the use of the word and. This statute was placed against a backdrop of well-established law, both the law involving state of incorporation as the sole basis for state citizenship and of the law of bankers' trust and its progeny, which had held that federal corporations are not covered under the statute. Well, no, no, no. But bankers' trust, there was no statute. Bankers' trust applied the 1844 decision that applied a common law rule, as I understand it, that said that a corporation is a resident of the state of its incorporation. And so it's applying a common law rule. And it says this common law rule is not met. And then it says the 14th Amendment, the Constitution, doesn't get you over it. And then the National Bank Statute doesn't get you over it. But in doing that, it's not looking at a statute at all, is it? Well, bankers' trust is looking at the diversity jurisdiction of the federal courts. It was not looking at 1332 specifically as it stands today, but it was looking at the requirement of citizens of an action between citizens of different states or citizens of a state and of a foreign state. And in that context, it held that federal corporations were not a citizen of any state. But it did that based on a single common law rule. That rule is that a corporation is a resident only of its state of incorporation. That's the 1844 decision that reverses Marshall on that issue. But that's just applying that rule. And then Congress comes in and says, you don't have to use common law anymore. Here's an actual statute. But Congress didn't say that with respect to foreign corporations. It listed first the fact that states are citizens of their state of incorporation, and then it added, and also of the state of their principal place of business. And I believe that's the way the district court construed it. That's the way most other courts who've looked at it have construed it, including not only the Second Circuit with respect to national banks, but also the Fifth, Seventy-Eighth, and the Ninth Circuit with respect to national banks. National banks have their own statute that is specific for national banks. They do. And that statute was passed ten years before the 1958 amendment. And if Congress intended, as Mr. Gottlieb argued, to have the principal place of business apply to federal corporations as well as state corporations, then that would have also amended or added to the 1948 statute's definition. No, because that doesn't account for the specific governing the general. There's a specific for the national bank, and so it controls. But in the absence of a specific grant of authority, we revert to the general, and that's the 1958 Act, which codified and expanded the common law rule applied in bankers' trust, no? Well, I think that's true, Your Honor, but I also think that there's a well-established rule of statutory construction that the court has reiterated in several cases. If Congress intends for legislation to change an established interpretation of a judicially created concept, it makes that intent specific. And there's absolutely nothing in the history of the 1958 amendments that depicts federal corporations or its applications to corporations. Let me ask one more, and then I'll let the other judges go. So how do you square that with both Exxon v. Allapotha, which says that we apply jurisdictional statutes as they're written, as well as the cases that your opposing counsel cited, suggesting that where we're looking at the common law, it doesn't require a specific clear statement. It just requires addressing the subject area. And it seems to me, just like in Exxon Mobil, which is the 1367 statute, the 1332 statute expressly addresses where corporations are citizens, which seems to provide more than enough clarity to overcome the common law rule that applied in bankers' trust. Well, Your Honor, I don't think that's correct, because I think you not only had bankers' trust, but you also had a series of statutes, not only the national banking statutes, that had specifically looked at federal corporations and ascertained whether they should be able to invoke the diversity jurisdiction and how their state citizenship should be defined. And the Second Circuit in the One West Bank case, which did involve national banks, but both that case, as well as the Ninth, the Eighth, the Fifth, and the Seventh Circuits, who all looked at that question, were cited by the Second Circuit. And this was in 2016, after the 2011 amendments. And all of those cases referenced the 1958 amendment as having been Congress enacting a provision stating that state-chartered corporations, which included state-chartered banks, is a citizen of both the state of incorporation and the state of the principal pace of business. And I think that is the way in which the diversity statute has been understood by all the courts of appeals, as well as all the district courts, except for a single district court in the Southern District of California, who have looked at that question both before and after the 1958 amendment, after the 2011 amendment, and there are at least three courts that have looked at the question since the district court decided this case. And two of them have decided that federal credit unions are not subject to the diversity jurisdiction under the principal place of business clause. I mean, there is also a long history of Congress reducing the access of the federal national corporations to diversity jurisdiction. There was the federal question jurisdiction that they cut back on, and there was the diversity jurisdiction that they cut back on. And I think the idea that without even mentioning federal corporations, that Congress intended to open wide the federal court jurisdiction on a diversity basis to all federal corporations is not supported by the statute or the history. And I think it is that district court did give a positive opinion of the statute. He did not say that every corporation had to have a principal place of business. Mr. Gottlieb left out the portion of his quote where he said, for example, state-chartered corporations. He was talking about needing to be incorporated in a state in order to invoke the principal place of business clause. Yes? Ms. Hoffman, I get the point about the Congress being concerned about federal corporations flooding the docket, but I think that was in the context of what were admittedly local entities attempting, at least in Congress's view of things, to manufacture jurisdiction by virtue of incorporating in a foreign state with which it had no particular attachment or business interests. But that doesn't seem to be the case here with respect to Navy Federal. It's admittedly a fairly large entity with operations that stretch across the country. So how does that play one way or the other with respect to the argument you're making here? Well, I think it plays that Congress wasn't concerned at all with federal corporations when it enacted the 1958 amendment and included principal place of business as an additional state of citizenship for state-chartered corporations. It was intended to fix that problem with respect to state-chartered corporations, and it never intended to speak at all to federal corporations. And I think that's the way the statute has been consistently interpreted. So what about Congress? Can I just go back just to make—I just want to make sure I understand your argument. Is there anything—you just said nothing that 1332c1 was not intended to apply to federally-charted corporations. Is there anything in the text or structure of 1332 that I can look at to see that, other than your perception of history? I mean, it doesn't say state-chartered corporations shall be deemed citizens, right? It doesn't limit—I mean, it applies to all corporations, not a subset of corporations. And so why might it limit the terms of 1332 based on your perceived intent of Congress here? Because I think the word—the use of the word and, and putting the principal place of business clause second, is a plausible interpretation of the statute. I think that it was meaning to expand the citizenship of state-chartered corporations, which is included in the first clause, by adding the principal place of business. You just said, Ms. Hoffman, that it is a plausible interpretation of the statute. I guess the question is, is it the most plausible interpretation of the statute? I think—I think it is. I mean, I think they're both—I think there's been sufficient argument both ways. I mean, you know, we pointed out in the brief that the language of the statute is also being changed by Mr. Gottlieb by including or in that statute. And he's defining and to mean either or or both. And if Congress had meant that, Congress could have used more specific language. I mean, I do believe it is— No, he's not saying it means or. That doesn't seem right. He's saying it means and. He's saying it means or. He's saying either or. He's saying you can have either the state of incorporation or the principal place of business. Or you can have both. Both. Okay. I mean, I think that Congress, as in many statutes, when we begin to look at them as specifically, with as much, you know, sort of power and focus as we do in this case, there are ways that Congress could have written it more clearly either way. And I think it's the overwhelming evidence is that Congress was focused on state chartered corporations and avoiding jurisdiction manipulation for state chartered corporations. It did not intend to undo what it had done to reduce federal corporations' access to diversity jurisdiction. There's no indication. Yes? Ms. Hoffman, what would you have us do with our Athenia decision where we held that an inactive corporation that was chartered in a particular state but having no principal place of business was nonetheless a citizen of that state of incorporation for purposes of this diversity statute? Doesn't that sort of suggest that the same result should apply here? No, I don't think it does. And I don't think the district court's analysis did either. When the district court said there must be both, there was a comma right after the word both, and he said, i.e., state chartered corporations. I think he was looking at the issue the same way that all the circuit courts that have looked at national banks to see whether or not 1332C1 added an additional basis of citizenship for national banks. The question I'm asking then is do you think Athenia was wrongly decided? No. Okay. I do not. Okay. Because I think as a state chartered corporation, it is a citizen of the state. And that the additional citizenship of principal place of business no longer exists because it's no longer in operation, but that doesn't make it cease being a state chartered corporation. And I don't think the district court's analysis required that. I do think that Mr. Gottlieb left out that important example that the district court made of what he meant by the word both. He meant state chartered corporations. Ms. Hoffman, you're past your time, so we'll hear from Mr. Gutowski. Thank you, Your Honors. May it please the Court. Your Honor, I think that the congressional intent behind the statute, the operative language in the statute, which dates back to 1958, is the touchstone from which we read the language. Because the Supreme Court, of course, has counseled that, absent clearly expressed legislative intention to the contrary, the language must be ordinarily regarded as conclusive. Well, I don't know how legislative history could be more clear that maybe federal's reading of 1332 is exactly to the contrary of what Congress intended. First of all, the purpose, as stated at the beginning of the Senate report, is ease the workload of the federal courts by reducing the number of cases involving diversity jurisdiction cases for corporations. Is there any indication, counsel? Yes, Your Honor. Is there any indication that that concern, Judge Diaz mentioned this earlier, that the concern you're describing from the legislative history had anything to do with federally chartered corporations? Anything in the legislative history that suggests that that was the concern, as opposed to state-chartered corporations? I'm sorry, Your Honor. The concern, as expressed in detail in the Senate report, indicates the gross number of cases on diversity were unmanageable. The means, then, by which, after establishing its intent, the means that Congress chose to address the issue was, one, quote, historic jurisdiction based upon diversity of citizenship be retained in the federal courts. So they're starting from the premise that the current common law rules, both bankers' trust for federal courts and the exclusive state of incorporation rule under a black and white taxicab, were being codified. And then, in addition to that, to address the gaming of the systems, if I can use that term, by state corporations, they added principal place in business to prevent corporations, state-chartered corporations from manufacturing the jurisdiction under diversity, claiming citizenship of both states. So it was a two-step process, as outlined in the Senate report, and I think it's because Congress started by codifying the federal. So then let me understand, counsel. So it seemed to me like you said that exactly right. They codified the rule applied in bankers' trust and then added to it an alternative grounds for being a citizen of a state in order to reduce this abuse that was happening, that you've talked about, right? But that seems inconsistent with the view that you're trying to have me read. Your description doesn't match up with your reading of the statute, is what I'm having trouble with. Well, by codifying bankers' trust, I mean codifying the rule, Your Honor, that federally-chartered corporations are stateless for purposes of determining citizenship under diversity. So because federal corporations were, at the beginning, excluded from being a citizen of any given state for purposes of diversity or otherwise, that was codified. The statute in the legislative history did not have to directly address federal corporations or exclude them. Okay. Do you have anything else, Mr. Gutowski? No, Your Honor. I'm here to answer any questions the Court may have regarding my client's position on this appeal. Thank you very much. Mr. Gottlieb, you have reserved some time for rebuttal. Thank you, Your Honor. I'd like to begin. Can I begin, Mr. Gottlieb? Sorry to cut you off right away, but the district court judge in this case, at the very end of his opinion, laid out a series of actions, affirmative actions that Congress took to specifically codify jurisdiction for a number of different federal corporate entities. And so why isn't that some evidence that Congress did not contemplate federal corporations being able to take advantage of what, on its face, appears to be a general, broad language, but which subsequent action by Congress seems to suggest is not as broad as you present it to be here today? Right. Thank you for that question, Your Honor. I think the statutes prior to 1958 that have been cited both by the district court and other courts are just irrelevant because statutes that were enacted by Congress, such as the National Bank Statute, before there was a default rule, simply tell us nothing about what Congress was trying to do in 1958. The post-1958 statutes that are cited by the district court and others, we think, only prove our point because they all simply define a specific jurisdiction of citizenship for particular entities, and not a single one of those statutes, and no statute that we are aware of post-1958, has purported to grant a diversity jurisdiction to a federal corporation based solely on its principal place of business. The upshot of these statutes is that Congress will actually The question I'm asking, do you think those statutory provisions would have been necessary given your view of the general jurisdiction statute? Absolutely. Take, for example, the Telecommunications Development Fund, which is 47 U.S.C. 614. That established the existence of a fund as a body corporate that states that its principal office shall be in the District of Columbia, and based on that, it should be deemed a citizen of D.C. All of those provisions for the Telecommunications Fund, Amtrak, the rural telephone bank, all designate D.C. as a specific jurisdiction, meaning those entities can't move to another place, and that was particularly relevant with respect to Amtrak, where Congress wanted to fix Amtrak's headquarters office in Washington, D.C. None of those statutes say we want diversity jurisdiction to be available to these entities based on their principal place of business. And, in fact, Wachovia makes clear that the concept of home office and principal place of business So, just so I understand your point, that Congress had a different purpose in mind when it passed those statutes, having nothing to do with the broad language of the diversity statute. Is that what you're saying? We think that's pretty clear from the context of those statutes, Your Honor, particularly with respect to Amtrak. On the legal question, the ultimate legal question of how the statute has to be interpreted, I agree with Judge Richardson with the line of questioning that you were asking opposing counsel. It's not just the Exxon Mobil case, but also cases like Astoria Federal Savings, which is an 8-1 decision, and U.S. v. Texas, which is an 8-1 decision, that Congress does not need to speak to the question with the type of clarity saying, we want to overrule bankers' trust. They need to speak to the question generally. It need not affirmatively prescribe the common law doctrine at issue. Those are the words of U.S. v. Texas. Here it's clear that the court did that by filling in the gap that existed prior to 1958. I want to address the textual arguments that opposing counsel touched on briefly. First of all, the reading of and that was adopted both by the district court and by the defendants in this case simply cannot be squared with the specific context of the statute, including the construction of the insurance direct action provisions. The insurance direct action provision is located in the exact same subsection of the statute. It is precisely the same formulation of a principal place of business clause connected to a place of incorporation clause by the word and. But Congress has made crystal clear that that is not limited to insurance entities that satisfy both criteria because unincorporated insurance entities are eligible for that provision. With respect to our interpretation, our interpretation is not an or interpretation. It is a both and interpretation. We do not believe that district courts can pick as between the two clauses as to which criteria are more important for determining corporate citizenship. We say a court is required to consider both. The example that we give in our brief is a simple arithmetic exercise of you add up all of the states of incorporation, the value of which can be zero, and you attach to that the principal place of business, the value of which must be one. That is how you determine the list of citizenships. Their interpretation confuses what a court must consider with respect to citizenship with the minimum requirements for diversity jurisdiction to apply. And we think that what Congress was doing in 1958 was simply setting a default rule, which they then clarified in 2011 should apply to all corporations, and they can make exceptions when they see fit as they've done in other statutes. I believe the balance of my time has expired, Your Honor. Thank you. Thank you very much, Mr. Gottlieb. I want to thank the lawyers for appearing here before us today under these very unusual circumstances. It is important, as I told the lawyers who appeared earlier today in front of us, that our branches of government, particularly the judicial branch, continue to function in these most difficult of times, even more important that we show that we are continuing to move forward. We appreciate the arguments that have been presented on behalf of the parties here. The case was well argued, and we will take it under advisement. Typically, as I mentioned earlier during the first argument, we would come down and greet counsel. Obviously, we can't do that here today. But please understand that we very much value your part in making sure that we arrive at the very best and fair resolution of this case, and you all have advanced that here today on behalf of your clients. So thank you very much. The court stands adjourned.
judges: Albert Diaz, Julius N. Richardson, Thomas E. Johnston